AO 106A (8/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>T-Mobile, 4 Sylvan Way, Parsippany, New Jersey 07504. | ) ) ) ) ) )  Case No.  '25  MJ346 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and sate under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of ___New Jersey___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) *(check one or more)*:
- ☒ evidence of crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 641, 1343;<br>42 U.S.C. §§ 1383a(a)(3), 1383a(a)(5) | Conspiracy, Theft of Public Money, Wire Fraud, Social Security Fraud & Conspiracy to Commit Social Security Fraud |

The application is based on these facts:
See Attached Affidavit of SSA-OIG Special Agent J.C. Rivera, incorporated herein by reference.

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet

*/s/ Jean C Rivera*
J.C. Rivera, Special Agent
Social Security Administration - Office of the Inspector General
*Printed name and Title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Telephone___ *(specify reliable electronic means)*.

Date: February 21, 2025

*/s/ Michelle M. Pettit*
*Judge's signature*

City and state: San Diego, CA

Hon. Michelle M. Pettit, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**T-Mobile** hosts the electronic communication account associated with the telephone number(s):

| Target Telephone # | Phone Number |
|---|---|
| Target Telephone #1 | 619-431-9422 |
| Target Telephone #2 | 619-200-1105 |

which are the subject of this search warrant and search warrant application. T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 4 Sylvan Way, Parsippany, New Jersey, 07504.

# ATTACHMENT B

I. **Service of Warrant**

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II. **Items to be Seized**

Agents shall seize the following records, data, and information covering July 2, 2017 to February 21, 2025; and maintained by the Provider for the subject account identified in Attachment A:

   a. Subscriber information, including:

      i. Names;
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities; and
      viii. Means and source of payment (including any credit card or bank account number) and billing records.

    b. Records and other information about past wire or electronic communications sent or received by the Target Telephones, including:

        a. The date and time of the communication;

        b. The method of the communication;

        c. The source and destination of the communication, such as the source and destination telephone numbers (call detail records) email addresses, or IP addresses; and

        d. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and data communications;

**which are evidence of violation of 18 U.S.C. §§ 371, 641, and 1343, and 42 U.S.C. §§ 1383a(a)(3) & 1383a(a)(5).**

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, J.C. Rivera, Special Agent with the Social Security Administration – Office of the Inspector General, having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of an investigation conducted by Social Security Administration – Office of the Inspector General, for information contained in the following T-Mobile ("Service Provider") account(s):

| Target Telephone # (TT#) | Phone Number | Service Provider |
|---|---|---|
| Target Telephone #1 | 619-431-9422 | T-Mobile |
| Target Telephone #2 | 619-200-1105 | T-Mobile |

(the "**Target Telephones**") for subscriber information, telephone toll data, and historical cell-site geolocation data from July 2, 2017, to February 21, 2025. There is probable cause that these records and information constitute, as more fully described in Attachment B, the constitute evidence of violations of federal criminal law, namely, 18 U.S.C. §§ 371, 641, 1343, and 42 U.S.C. §§ 1383a(a)(3) & 1383a(a)(5): conspiracy, theft of public money, wire fraud, social security fraud and conspiracy to commit social security fraud (the "Target Offenses").

2. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by agents on this investigation or by other federal, state, and local law enforcement with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed.

3. Because this affidavit is being submitted for the limited purpose of seeking the search warrant specified below, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

## AFFIANT INTRODUCTION AND EXPERTISE

4. I have been employed as a Special Agent of the Social Security Administration – Office of the Inspector General ("SSA-OIG") assigned to the San Francisco Field Division, San Diego Field Office as a Special Agent since 2022. I received my initial training and instruction at the Federal Law Enforcement Training Center located in Brunswick, Georgia. There I received training concerning violations of United States criminal statutes and law enforcement investigation techniques and practices. I have handled a variety of criminal cases, primarily focused on Social Security fraud, bankruptcy fraud, identity theft, money laundering and other financial crimes.

5. In preparing this affidavit, I have conferred with other agents, Social Security Administration employees, bankruptcy trustee employees, and law enforcement personnel who are experienced in the areas of financial crimes and fraud offenses, and the opinions stated below are based in part on my conversations with them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

6. The following is based on my own investigation and investigations conducted by other government employees, and includes oral statements and written records created by other government employees, physical surveillance, interviews, public records, database checks, searches, subscriber and telephone information requests, and other investigation and information. Dates and times are approximates.

## STATUTES AT ISSUE

7. The Target Offenses are the following: 18 U.S.C. §§ 371 (conspiracy), 641 (theft of government money or property), 1343 (wire fraud), 42 U.S.C. §§ 1383a(a)(3) (social security fraud) and 1383a(a)(5) (conspiracy).

8. Conspiracy to defraud the United States is committed by an individual when (1) an agreement exists between two or more persons to defraud the United

States by obstructing the lawful functions of the Social Security Administration by deceitful or dishonest means; (2) the individual becomes a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performs at least one overt act for the purpose of carrying out the conspiracy. *Manual of Model Criminal Jury Instructions, 11.2* (9th Cir. 2022); *see also United States v. Caldwell*, 989 F.2d 1056, 1058-59 (9th Circ. 1993); *United States v. Rodman*, 776 F.3d 638, 642 (9th Circ. 2015).

9. Theft of government money or property occurs when: (1) an individual knowingly embezzles, steals, converts to their use, or converts to the use of another, money or property of value with the intention of depriving the owner of the use or benefit of the money or property; and (2) the money or property belongs to the United States, and (3) the value of the money or property is more than $1,000. *Manual of Model Criminal Jury Instructions, 23.1* (9th Cir. 2022); *see also Baker v. United States*, 429 F.2d 1278, 1279 (9th Cir. 1970); *United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir. 1994).

10. Wire fraud is committed when an individual (1) knowingly participates in, devises, or intends to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of a false or fraudulent pretenses or representations or promises; (2) the statements are made as part of the scheme are material, which means to influence or capable of influencing a person to part with money/property; (3) the individual acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the individual used or caused to be used an interstate wire communication to carry out or attempt to carry out an essential part of the scheme. *Manual of Model Criminal Jury Instructions, 15.3* (9th Cir. 2022); *see also United States v. Holden*, 908 F.3d 395, 399-401 (9th Cir. 2018), *as amended on denial of reh'g* (Oct. 30, 2018); *United States v. Miller*, 953 F.3d 1095, 1101-03 (9th Cir. 2020).

11. Social Security fraud is committed when an individual (1) having knowledge of any event affecting either (A) their initial or continued right to any benefit under Title 42, United States Code, Chapter 7, or (B) the initial or continued right to any such benefit of any other individual in whose behalf they have applied for or are receiving such benefit, (2) conceals or fails to disclose such event, (3) with an intent fraudulently to secure such benefit either in a greater amount or quantity than is due or when no such benefit is authorized (42 U.S.C. § 1383a(a)(3)) or conspires to do so (42 U.S.C. § 1383a(a)(5)).

## FACTS SUPPORTING PROBABLE CAUSE

### A.  Background of Investigation

12. The Social Security Administration ("SSA") administers a number of programs, including Supplemental Security Income ("SSI"). To be eligible for SSI, an individual must be disabled and meet certain financial resource, income, and residency guidelines established by law. In brief and relevant part, an individual must not have financial resources in excess of $2,000 ($3,000 if married). Some property is excluded from this calculation, including a home (so long as the individual resides in that home) and the first automobile owned by the SSI recipient (the value of additional automobiles would count toward financial resources). An SSI recipient is required to fully and accurately disclose all financial resources and any income to SSA, and to truthfully report his or her living arrangements and residence, and provide updated information about any changes to SSA.

13. The amount of SSI awarded to an individual varies based on the information they provide to SSA regarding their living situation, income and financial resources, including for their cohabiting spouse. A spouse's income (including their SSI) will not be considered by SSA as "income" for the other spouse if they are not living in the same household, either due to separation or to

homelessness. In addition, in the State of California individuals experiencing homelessness receive a greater SSI payment than housed individuals.

### B. Statements Made to SSA

14. On or about December 5, 2016, Richard Floyd Vader applied for SSI. In his application to SSA, Vader stated that he was married to "Roseanne Vader" but noted that "I've been separated for at least the last 2 years." Vader stated that he had been living at "friends places" in Lakeside since September 1, 2016: "I stay at friends (sic) places. I buy my own food. I do not pay rent. There are times where I sleep in my truck." The only financial resources that Vader listed were a 2001 Ford F-150 truck (value $2,000.00) and a JPMorgan Chase Bank account with a $0 balance. Vader stated that he had no income.

15. SSA repeatedly denied his application due to a finding that Vader did not meet the criteria to be considered disabled for SSI purposes.

16. On or about August 30, 2019, Vader sought judicial review in the United States District Court for the Southern District of California matter number 19-cv-1660-JLB. On March 30, 2021, Vader's motion for summary judgment was granted, SSA's denial was reversed, and the matter was remanded to SSA for further proceedings. On July 30, 2021, the court also awarded Vader $6,146.99 in attorney's fees.

17. On June 27, 2022, SSA conducted a pre-effectuation review of Vader's eligibility to receive SSI. This review, which was conducted at the El Cajon SSA district office, required Vader to provide truthful information under the penalty of perjury. Vader confirmed that he remained separated from his wife and stated that he was homeless and had been since August 1, 2019.

18. As to his financial resources since August 1, 2019, Vader listed a 2007 Ford Focus worth $1,500.00, owned from August 2019 to June 2022, a 2006 Nissan Sentra worth $2,300.00, which he claimed he owned only since June 2022. Vader disclosed a JPMorgan Chase Bank checking account with zero value from December

2016 through August 2019, and $70.00 value from September 2019 to June 2022. Vader also disclosed a U.S. Bank account worth $80.00 from only June 2022. Vader stated, "I do not own any other type of resource." Under remarks, the SSA employee noted "My JP Morgan Chase account was closed" and "The 2007 Ford Focus blew up on me, it was about two or two in a half years ago."

19.   When asked about settlements or awards, Vader stated that he had a $1,200 award in October 2021, a $600 award in December 2021, both from Geico. Under remarks, the SSA employee noted "I received a auto insurance settlement for the vehicle I currently have after I was in an accident."

20.   On or about August 19, 2022, SSA approved Vader to receive SSI retroactive to June 27, 2018. Vader's statements concerning his homelessness and his separation from his wife increased his SSI award calculation. SSA awarded Vader retroactive payments back to July 2018 and began to pay him monthly SSI of $1,147.20 beginning in September 2022.

21.   Through March 2024, Vader received at least $74,024.48 in SSI payments from SSA.

C.   **Review of Vader's Financial Records**

22.   I have reviewed records from Union Bank indicating that Vader opened a checking account in or around June 2019. The records showed that on or about June 26, 2019, Vader deposited $7,500.00 obtained via cash advance from his Wells Fargo credit card. On or about March 12, 2020, Vader deposited $23,500.00 obtained via cash advance from his Bank of America credit card. On or about April 30, 2020, Vader deposited $8,600.00 obtained via cash advance from his JPMorgan Chase Bank credit card. This money (totaling $39,600.00) was subsequently transferred to Vader's E*Trade account, where from October 2019 through April 2021, Vader traded stocks. In the spring of 2021, Vader completed a series of transfers from his E*Trade account back to his Union Bank checking account, followed by large cash

withdrawals totaling $35,434.00 between April 5, 2021, and April 22, 2021, when the Union Bank account was closed.

23. Union Bank records also revealed that Vader made regular payments to T-Mobile, in an amount I know to be consistent with a monthly family wireless plan (including multiple cellular telephone lines and related data services).

    **D.    2022 Chapter 7 Bankruptcy**

24. I learned that on or about March 25, 2022, Vader filed a voluntary petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Southern District of California case number 22-bk-00770.

25. On Official Form 106A/B Schedule A/B, Vader listed a single-family home located at 12731 Julian Ave in Lakeside, CA 92040, which he valued at $454,900.00, and a 2006 Nissan Sentra valued at $900.00. He also disclosed a checking account with U.S. Bank (valued at $160.00), an E*Trade account (valued at $84.00), and an "Est. SSDI Claim – retroactive pay for approx. 6 years" (valued at $97,200.00). In Schedule C, Vader listed his residence, his Nissan Sentra, and his SSDI claim as exempted property pursuant to 11 U.S.C. § 522(b)(3), with the residence listed as a homestead exemption and the SSDI claim exempt pursuant to 42 U.S.C. § 407. Vader listed twelve creditors, including Bank of America ($27,028 credit card debt), Capital One Bank ($13,501.00 credit card debt), Citicards ($5,214.00 credit card debt), JPMorgan Chase Bank ($12,241.00 credit card debt and $9,870 credit card debt), and Wells Fargo ($7,646.00 credit card debt).

26. On April 28, 2022, Vader was sworn and testified before the U.S. Trustee in the bankruptcy matter during a meeting of creditors. Vader affirmed the accuracy of all statements in his bankruptcy filing, testified that he had remained at the same address since filing his bankruptcy petition, and indicated he had not filed a tax return since 2013 because he had not made any money.

27. On May 2, 2022, the Trustee reported locating no property available for distribution from the estate over and above that exempted by law. The Trustee scheduled the discharge of $86,131.00 in claims. The Trustee filed a report of no distribution and closure of the bankruptcy case on or about June 29, 2022.

### E.     Fraud Investigation

28. In 2023, SSA received information from the Internal Revenue Service indicating that Vader had financial transactions that had resulted in potential unreported income. Because unreported income or undisclosed financial resources might affect Vader's eligibility for SSI, SSA scheduled Vader for a redetermination of eligibility for SSI interview.

29. On November 29, 2023, at the El Cajon SSA district office, Vader was again interviewed by an SSA employee under penalty of perjury. Vader once again stated that he was homeless and claimed had been so since December 1, 2016. Regarding financial resources, Vader disclosed as current resources the 2006 Sentra (value $2,300.00), a U.S. Bank account (valued $80.00 from June 2022 through November 2023, and $3,000.00 from December 2023) and in remarks it is noted that he said "I don't know how much money i have in my bank account however the money I have is from Social Security Administration." In addition, Vader disclosed stock valued at $62.53 from November 2021 to the present, with remarks "I don't have the paperwork on the Morgan Stanley Domestic Holdings Inc at this time. I did some trading for myself and my mom and they were losses. I believe I did report that I had a trading account." Vader denied any other income or resources.

30. I obtained records from the California Department of Motor Vehicles ("DMV") for Vader, indicating that Vader owns a 2006 Nissan Sentra that he purchased on July 25, 2019, and registered on July 26, 2019. In addition, DMV records indicate that Vader purchased a 1989 Bounder motorhome on December 13, 2016. He has had the vehicle in "planned non-operation" status since registering his

purchase with the DMV on June 5, 2017. When he registered the vehicle and transferred title into his name, Vader wrote "(t)he vehicle won't be driven or parked on the street. PNO statis (sic) not able to smog." A vehicle in planned-non-operation status cannot be lawfully operated or parked on the public streets in California and is subject to citation and impoundment.

31. During multiple visits during January 2024, I observed the 2006 Nissan Sentra registered to Vader parked in the driveway, and a motorhome that appears to be consistent in appearance with a 1989 Bounder parked off-street, to the side and rear of the residence located at 12731 Julian Ave.

    **F.**    **Rose Anne Vader ("Rose")**

32. I reviewed Rose Anne Vader's SSA records and learned that she applied for SSI on or about July 6, 2015. In her application, Rose stated that she was married to Rick Vader and was living with her son Ricky Vader at a location in Lakeside, California. This application was initially denied by SSA on October 27, 2015. Reconsideration was denied on March 18, 2016. Rose requested a re-hearing on May 2, 2016 and testified at a hearing on March 12, 2018 in San Diego, California. On May 11, 2018, the SSA issued a decision denying her SSI based on her level of disability not meeting SSI standards. This denial was appealed to the United States District Court in the Southern District of California, case number 19-cv-00703-AHG. Ultimately, the matter was remanded for further proceedings with SSA and concluded on May 14, 2021.

33. In the meantime, Rose reapplied for SSI on May 3, 2019. At that time, Rose reported that she was married to Rick Vader, that she was homeless (remark: "I am homeless"), and that she had been homeless since January 1, 2018, in Lakeside, California. Rose denied having any resources or income.

34. On August 11, 2023, SSA approved Rose to receive SSI retroactive to June 3, 2015, which would have resulted in a retroactive payment of approximately $100,780.76. This retroactive payment was suspended due to this investigation.

35. On September 20, 2023, Rose was interviewed by SSA with the assistance of a Legal Aid Society authorized representative. Rose reported that she lived under an abandoned mobile home and had no one that could be her payee.

36. Rose received SSI from November 2023 to April 2024, totaling $7,750.72. Her SSI was suspended due to this investigation from April 2024, but the benefits resumed in August 2024. Rose thereafter received an additional $9,230.67 as of February 2025. Her monthly SSI benefit is currently $1,335.81, which includes additional money based on her claim of homelessness.

### G. T-Mobile Subscriber Information

37. In April 2024, agents subpoenaed subscriber information for the **Target Telephones** including subscriber names, address, local and long-distance connection records, records of session times and durations, length of service and types of services utilized, telephone or instrument number, or other subscribers' number or identity, including any temporarily assigned network address, and means and source of payment for such service.

38. The information provided by T-Mobile included subscriber information and address information indicating that TT#1 and TT#2 remained active with a service establishment date of July 2, 2017. The account billing address information always listed "RICKY F VADER" (the son of Vader and Rose) and initially included the address 12731 Julian Avenue in Lakeside, California (the residence owned by Richard Vader). That address was updated on July 31, 2018, to a residential address in La Mesa, CA that I later determined to be associated with Ricky F. Vader. On May 6, 2021, the T-Mobile service address was updated to Post Office Box 791 in Lakeside, CA.

39. PO Box 791 in Lakeside, CA is linked to both Vader and Rose. Specifically, the PO Box address has been provided to SSA as a mailing address by both Vader and Rose. Of note, the United States Post Office in Lakeside, CA is located approximately 0.4 miles from 12731 Julian Ave.

### H. The Target Telephones

40. I believe the requested subscriber information, telephone toll data, and historical cell-site geolocation data for the **Target Telephones** constitutes evidence of the Target Offenses as it helps to establish the locations of Vader and Rose on certain dates and times of relevance to the investigation. Specifically, I believe that this information will reveal that Vader and Rose lived together at 12731 Julian Avenue in Lakeside during the relevant period. In addition, the requested toll records, combined with other evidence, will also help establish the identities of the users of the **Target Telephones**. Although I suspect that Vader is the user of **TT#1** and that Rose is the user of **TT#2**, it is axiomatic that identity is an element of every crime and that information that tends to identify Vader and/or Rose as one of the users of the Target Telephones constitutes evidence of the Target Offenses. Additional information regarding each of the **Target Telephones** is set forth below.

### TT#1 (619-431-9422)

41. **TT#1** (619-431-9422) is the **T-Mobile** number associated with Richard Floyd Vader, a target subject of this investigation. **TT#1** corresponds to the telephone number provided by Vader to the Social Security Administration during his initial application for SSI in 2016 and during a redetermination of eligibility interview done in 2023.

42. Based on the foregoing, I believe the user of **TT#1**, whom I suspect is Vader, uses **TT#1** to communicate with family and associates. These communications, in turn, generate historical cell site information that generally place the user of **TT#1** at certain locations on certain dates. This evidence, combined with

other evidence, constitutes evidence of the Target Offenses because it can help establish, among other things, the identity of the user of **TT#1**, the location the user resides, and the length of residency. I therefore believe the requested information constitutes evidence or the Target Offenses.

### **TT#2 (619-200-1105)**

43.  **TT#2** (619-200-1105) is the **T-Mobile** number associated with Rose Anne Vader, a target subject of this investigation. **TT#2** corresponds to the telephone number provided by Rose to the SSA during her initial application for SSI in 2015 and during her redetermination of eligibility interview done in 2023.

44.  Based on the foregoing, I believe the user of **TT#2**, whom I suspect is Rose, uses **TT#2** to communicate with family and associates. These communications, in turn, generate historical cell site information that generally place the user of **TT#2** at certain locations on certain dates. This evidence, combined with other evidence, constitutes evidence of the Target Offenses because it can help establish, among other things, the identity of the user of **TT#2**, the location the user resides, and the length of residency. I therefore believe the requested information constitutes evidence or the Target Offenses.

I.   **Historical Cell-Site Information**

45.  Based on my training and experience, and my consultation with other law enforcement officers, I am aware that **T-Mobile** routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text messages, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

46. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and the phone user's location at particular times. I am also aware through open-source reporting that T-Mobile retains call records for approximately five years and historical cell site data for approximately 24 months.

47. Given these facts, I seek a warrant to search the **Target Telephones** for the records and information in Attachment B.

## PRIOR ATTEMPTS TO OBAIN THIS EVIDENCE

48. I have not applied for any prior search warrants to obtain the requested information.

*Jean C Rivera*
J.C. Rivera, Special Agent
Social Security Administration
Office of Inspector General

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on February 21, 2025.

*Michelle M. Pettit*
Honorable Michelle M. Pettit
United States Magistrate Judge